[Cite as *State v. Taylor*, 2014-Ohio-3574.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-166 |
| v. | : | (C.P.C. No. 10CR-6502) |
| Wil W. Taylor, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 19, 2014

*Ron O'Brien,* Prosecuting Attorney, and *Steven L. Taylor,* for appellee.

*Byron L. Potts & Co., LPA,* and *Gloria L. Smith,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Wil W. Taylor, appeals from a judgment of the Franklin County Court of Common Pleas in favor of plaintiff-appellee, State of Ohio ("State"), denying appellant's motion for post-conviction relief. For the reasons that follow, we affirm the judgment of the trial court.

A. Facts and Procedural History

{¶ 2} On November 4, 2010, a Franklin County Grand Jury indicted appellant on two counts of felonious assault in violation of R.C. 2903.11(A)(2). Both counts carried specifications under R.C. 2941.145 for use of firearm and under R.C. 2941.146 for discharging a firearm from a motor vehicle. The jury found appellant guilty of all counts and specifications. Following a sentencing hearing on September 6, 2012, the trial court sentenced appellant to a prison term of 13 years.

{¶ 3}   We affirmed appellant's conviction on direct appeal in *State v. Taylor,* 10th Dist. No. 12AP-870, 2013-Ohio-3699. In *Taylor*, we noted that "[t]he state's case was largely based on the testimony of Christion Chavis, the driver of a vehicle into which appellant was alleged to have fired several gunshots." *Id.* at ¶ 3. Chavis testified that he and appellant were high school classmates and that he had endured harassment from appellant and appellant's fellow gang members for several months prior to the incident in question. On that day, Chavis and a friend, Malik Price, encountered appellant and his gang at a local bowling alley where appellant again threatened him. According to Chavis, when he left the bowling alley with Price, the following events ensued:

> Enroute to his house, Chavis noticed a car with five occupants following him. Chavis recognized three of the men in the car—appellant, Daventa Penn, and a man known to him only as Kenta. Appellant was seated in the front passenger seat; Penn was seated directly behind appellant. Both appellant and Penn had their windows rolled down. Chavis maneuvered into the right turn lane in an effort to elude the other car. The other car then pulled into the left lane and eventually stopped beside Chavis at a traffic light. Chavis estimated the distance between the two cars as "a couple feet away." (Tr. 116.) Chavis testified that he saw appellant "hang[ ] out [of] the car with [a] gun" and then fire several shots at Chavis's car. (Tr. 113.) Chavis was close enough to appellant to get a "good look" at him. (Tr. 116.) Chavis averred that appellant was talking when he "got out the car, hanging out the car," but he could not understand what appellant was saying because the windows in Chavis's car were rolled up. (Tr. 152.)
>
> Chavis also testified that appellant was "grabbing for something, getting ready to hang out the car." (Tr. 154.) He stated that appellant was hanging out of the car window" from his—his chest up, far enough for him to aim * * * a gun and shoot right next to me." (Tr. 164.) According to Chavis, he was "looking down the barrel of a gun." (Tr. 169.) However, Chavis also testified that appellant initially hung out of the car window without the gun, then grabbed for something inside the car. When Chavis saw this movement, he ducked down because he thought appellant was retrieving a gun. Chavis testified that he did not actually see Chavis shoot the gun at his car; however, he assumed appellant fired the shots because he was the only one who grabbed for something. After the shooting ended, Chavis sat up and saw the car drive off

with appellant hanging out of the door with the gun in his hand. Neither Chavis nor Price was hit by any of the bullets.

At trial, Chavis identified appellant as the shooter.

*Id.* at ¶ 6-8.

{¶ 4} After this court denied appellant's direct appeal, appellant timely filed a petition for post-conviction relief pursuant to R.C. 2953.21(A)(1)(a). On January 30, 2014, the trial court denied appellant's petition, without a hearing. Appellant filed a timely notice of appeal to this court.

### B. Assignments of Error

{¶ 5} Appellant's sole assignment of error is as follows:

THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT A HEARING.

### C. Standard of Review

{¶ 6} The appropriate standard for reviewing a trial court's decision to dismiss a petition for post-conviction relief, without an evidentiary hearing, involves a mixed question of law and fact. *State v. Tucker*, 10th Dist. No. 12AP-158, 2012-Ohio-3477, ¶ 9. This court must apply a manifest weight standard in reviewing the trial court's findings on factual issues underlying the substantive grounds for relief, but we must review the trial court's legal conclusions de novo. *Id.* A trial court's decision to deny a post-conviction petition without a hearing is reviewed under the abuse-of-discretion standard. *State v. Boddie*, 10th Dist. No. 12AP-811, 2013-Ohio-3925, ¶ 11, citing *State v. Campbell*, 10th Dist. No. 03AP-147, 2003-Ohio-6305, ¶ 14. An abuse of discretion entails a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### D. Legal Analysis

{¶ 7} The right to seek post-conviction relief is governed by R.C. 2953.21(A)(1)(a), which provides, in relevant part:

Any person who has been convicted of a criminal offense * * * who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United

States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

{¶ 8} The post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. *State v. Calhoun,* 86 Ohio St.3d 279, 281 (1999). "[I]n a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *State v. Jackson*, 64 Ohio St.2d 107 (1980).

{¶ 9} Post-conviction relief is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. *State v. Carter*, 10th Dist. No. 13AP-4, 2013-Ohio-4058, ¶ 15, citing *State v. Murphy*, 10th Dist. No. 00AP-233 (Dec. 26, 2000). The petitioner, however, is not automatically entitled to an evidentiary hearing on the petition for post-conviction relief. *Id.* Indeed, R.C. 2953.21(C) states, in relevant part:

Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript.

{¶ 10} In his first assignment of error, appellant claims that the trial court abused its discretion by denying post-conviction relief, without a hearing, inasmuch as he presented evidence in the form of his own affidavit, the affidavit of his girlfriend, and the affidavit of his mother, all of which support his claim of ineffective assistance of trial counsel. More particularly, appellant asserts that trial counsel misled him about the

strength of the State's evidence, erroneously advised him not to accept the State's plea deal, and misinformed him of the maximum prison term he could receive if convicted on all counts and specifications.

{¶ 11} In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301 (1965). Therefore, the burden of showing ineffective assistance of counsel is on the party asserting it. *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie,* 81 Ohio St.3d 673, 675 (1998), *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101.

{¶ 12} In order to succeed on a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. *Strickland v. Washington,* 466 U.S. 668, 681 (1984). First, he must demonstrate that his trial counsel's performance was deficient. This requires a showing that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 686. If he can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance. *Id.* In the context of a guilty plea, the appellant must show that, but for counsel's deficient performance, appellant would not have pleaded guilty. *State v. Nero,* 56 Ohio St.3d 106 (1990).

{¶ 13} One of appellant's arguments in his direct appeal in *Taylor* was that his conviction was against the manifest weight of the evidence. In our decision, we noted that the question of guilt essentially resolved to a matter of witness credibility. *Id.* at ¶ 50. In concluding that the guilty verdict was not against the manifest weight of the evidence, we stated that "[t]he jury obviously chose to believe Chavis's testimony despite his credibility issues." *Id.*

{¶ 14} In denying appellant's motion for post-conviction relief, the trial court stated: "The advice of counsel to not accept a plea offer and to go to trial is not evidence of ineffective assistance of counsel. Given the strength and weaknesses of the State's case (e.g. no physical evidence, a State's witness who was serving time when he testified against the Defendant, and a theory of the case were [sic] the State's witness had reasons to fabricate the shooting), this Court cannot find that the advise to go to trial is not the

result of reasonable professional judgment so as to constitute ineffective assistance of counsel." (Decision and Entry, 4.)

{¶ 15} We agree with the trial court's assessment of counsel's advice to appellant. As we noted in our decision in appellant's direct appeal, in order to convict appellant, the jury was required to believe Chavis' testimony. The other victim refused to identify the shooter, there were no other eyewitnesses to the crime, and the physical evidence recovered from the scene was far from conclusive. Accordingly, we cannot say that trial counsel performed poorly in the context of plea discussions when he expressed confidence in appellant's chances at trial.

{¶ 16} Moreover, in post-conviction relief proceedings, the trial court may, under appropriate circumstances, deem affidavit testimony to lack credibility without first observing or examining the affiant. *State v. Davis*, 10th Dist. No. 13AP-98, 2014-Ohio-90, ¶ 26, citing *State v. Calhoun*, 86 Ohio St.3d 279, 284 (1999). Indeed, this court has previously held that a petitioner's own self-serving affidavit is legally insufficient to rebut the record in the underlying criminal proceedings. *State v. Banks,* 10th Dist. No. 10AP-1065, 2011-Ohio-2749, citing *State v. Kapper*, 5 Ohio St.3d 36, 38 (1983); *State v. Mayrides*, 10th Dist. No. 03AP-347, 2004-Ohio-1623. Unless the petition is also supported by operative facts other than those contained in the petitioner's affidavit, the petition may be denied without a hearing. *Id.*

{¶ 17} In his motion for post-conviction relief, appellant submitted his affidavit wherein he avers as follows:

> 1. There was a plea offer in my case in Case No. B-10CR-11-6502. My trial attorney, David Moore, spoke with me about the plea offer. He said that the state offered 18 months incarceration for a plea that would dismiss one of the felonious assaults and reduce the other felonious assault to a lesser charge. The deal included dismissing the gun specifications and the drive-by specifications.
>
> 2. David Moore told me the state had no evidence and that this would be one of the easiest trials that he ever had. I would have accepted the plea offer if he had not told me that the state had no evidence.

3. David Moore told me that even the state's attorney said that I would win the case. Based on this, the plea would have been entered without the prosecutor canceling the plea offer.

4. David Moore told me that he would not feel right with me taking the 18 month plea deal because he could beat the case because of the lack of evidence. If my attorney would have explained that the state did have evidence against me, I would not have gone to trial.

5. David Moore told me that he would not allow me to take the plea deal because he felt like he could beat the case. He advised me to reject the plea offer. Based on my attorney's advice, I rejected the plea deal.

6. My girlfriend and my mother were present during some of the plea deal discussions with my attorney.

{¶ 18} Appellant's girlfriend, Somnea Brown, avers that she heard appellant's trial counsel tell him that an eight-year prison term was the maximum sentence that the trial court could impose if appellant were convicted of all charges. Appellant's mother, April Taylor, avers that counsel told her that the maximum prison term was seven years. Appellant's affidavit is silent as to counsel's representations regarding the maximum prison term.

{¶ 19} To the extent that appellant relies on his own affidavit in support of his contention that his trial counsel failed to inform him of the evidence the State intended to produce, we note that the hyperbole appellant attributes to his trial counsel is difficult to believe. While appellant's mother is more specific regarding the evidence trial counsel allegedly failed to disclose to her son, appellant admits that his mother was only present "during some of [my] plea deal discussions with my attorney." Thus, the trial court had reason to discount this particular claim of ineffective assistance of trial counsel.

{¶ 20} As to appellant's claim that his trial counsel "would not allow me to take the plea deal," the trial court determined that appellant presented no credible evidence showing that he would have accepted the plea offered by the State had his counsel not advised against it. Giving appellant the benefit of the doubt, we find that it is arguably permissible to infer from the affidavits that, but for counsel's erroneous advice, appellant would have accepted a plea offer of 18 months in prison. However, the record shows that

appellant was aware that the State never offered a plea deal guaranteeing an 18 month sentence. The transcript reveals the following exchange:

> MR. GRACEFFO: The state's offer at this point would be for some sort of resolution whereby the parties could recommend to the court that Mr. Taylor *serve four years 11 months with a one-year gun specification, making him eligible for judicial release application after one year and six months of his receipt into the institution.* And I wanted to make sure that that offer was put on the record.
>
> And do you want to address these one at a time, judge?
>
> THE COURT: I just want to make sure. Your client has rejected that offer, Mr. Moore, obviously?
>
> MR. MOORE: Yes, yes, Your Honor.
>
> THE COURT: Was there anything lesser than that that you were willing to - - he was willing to consider in the felony range, a couple years?
>
> MR. MOORE: The only thing we came - - just looking at from the evidence standpoint, Your Honor, I told him we would maybe possibly entertain a couple misdemeanors based off the facts of the case. But other than that, that's pretty much - - that's about the closest we got, Your Honor.

(Emphasis added.) (Tr. 5-6.)

{¶ 21} In this instance, the judge who ruled on appellant's motion for post-conviction relief is the same judge who presided over appellant's criminal trial. In reviewing the claims appellant makes in his affidavit, the trial judge noted that "[i]t is apparent that [appellant] was concerned with the possibility of having a felony on his record, a result that would have occurred had [appellant] accepted the plea offer." (Decision and Entry, 4.) The plea deal offered by the State required appellant to plead guilty to a felony and "serve four years 11 months with a one-year gun specification." (Tr. 5.)

{¶ 22} Additionally, with respect to appellant's claim that his counsel misinformed him of the potential maximum penalty, we note that only appellant's mother and girlfriend make that claim in their affidavits; appellant does not make that claim in his

affidavit. As noted above, appellant admits that his mother and girlfriend were only present "during some of [my] plea deal discussions with my attorney." Moreover, appellant's mother and girlfriend gave conflicting accounts of trial counsel's statement regarding the maximum possible sentence.

{¶ 23} Based on the foregoing, we find that appellant's evidence does not establish substantive grounds for post-conviction relief based upon ineffective assistance of trial counsel. Moreover, in determining the credibility of supporting affidavits in post-conviction relief, trial courts should consider all relevant factors, including:

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.

*Calhoun* at 285, citing *State v. Moore*, 99 Ohio App.3d 748, 754-56 (1st Dist.1994).

{¶ 24} In this case, the factors justify the trial court's finding that the affidavit testimony presented by appellant is unworthy of belief, without the need to examine the affiants. Indeed, the judge who ruled on appellant's motion for post-conviction relief also presided over appellant's criminal trial, the affiants are either related to appellant or closely associated with appellant, the averments contain hearsay statements of appellant's trial counsel, the averments are not consistent with regard to trial counsel's statement of the maximum sentence, and appellant's averments regarding the plea offer are contradicted by the transcript of proceedings in appellant's criminal trial. The trial court cited each of these factors in assessing the credibility of appellant's affidavits.

{¶ 25} In *Calhoun*, the Supreme Court stated:

> Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of

> the trial court. A trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur.

*Id.* at 285.

{¶ 26} Under the circumstances, we find that the trial court acted reasonably when it determined that appellant's affidavits were not credible without first observing or examining the affiants. Accordingly, we hold that the trial court did not err when it denied appellant's motion for post-conviction relief without a hearing. Appellant's sole assignment of error is overruled.

{¶ 27} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.

_____